*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. B. WHITE, Minor.

FOR PUBLICATION
July 14, 2026
10:57 AM

No. 378232
Genesee Circuit Court
Family Division
LC No. 16-133498-NA

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

KOROBKIN, J.

This is a child-welfare case in which respondent, the minor child's father, appeals the trial court's order removing the child from his custody.[1] Respondent argues that the trial court erred when it ordered the removal because the child was already in a safe placement with a relative who had power of attorney over the child. We agree with respondent that the trial court clearly erred by finding the conditions for removal satisfied under MCL 712A.13a(9) and MCR 3.965(C)(2). Therefore, we reverse and remand.

## I. BACKGROUND AND FACTS

Petitioner, Department of Health and Human Services (DHHS), and Children's Protection Services (CPS) first became involved with the family shortly after the child's birth in 2016 because the child had been exposed to alcohol and cocaine *in utero*. The child was diagnosed with Down syndrome and neonatal abstinence syndrome. In addition, respondent was using cocaine with the child's mother and had been incarcerated for instances of domestic violence involving the mother. At that time, petitioner filed a petition for the child's removal from both parents, but the petition was dismissed after the parents participated in an inpatient substance abuse program.

---

[1] The child's mother is also a respondent in the underlying case, but she is not a party to this appeal. In this opinion, therefore, "respondent" refers to the child's father.

In 2017, another petition was filed after petitioner received a report of improper supervision and both parents admitted to cocaine use. The court took jurisdiction over the child and ordered the parents to drug-treatment court but did not remove the child from their custody. The court terminated its jurisdiction after the parents successfully completed a drug-treatment program and graduated from drug-treatment court.

In 2021, a petition for removal was filed and the trial court authorized the petition because of allegations of substance abuse and domestic violence in the home. Petitioner later filed a supplemental petition to terminate both parents' parental rights in 2023 because the parents were living in an unsafe house, and, as to respondent, he had tested positive for cocaine numerous times and missed about a third of the scheduled parenting-time visits (32 out of 98). Later that year, after the parents began making progress with sobriety and housing, participated in Alcoholics Anonymous and domestic-violence services, and attended parenting time regularly, petitioner asked the court to hold the termination petition in abeyance, and the court ordered the goal changed from adoption back to reunification. In May 2024, the trial court granted petitioner's request to terminate jurisdiction.

But in August 2025, petitioner filed the petition at issue here, requesting that the court take jurisdiction and remove the child from both parents because of continued substance abuse and domestic violence in the home. At an initial preliminary hearing approximately three weeks after the petition was filed, the child was living with the child's adult sister, respondent was in jail, and the child's mother was in a residential treatment facility. Petitioner agreed that the child was safe with the adult sister and was not seeking an emergency removal. The preliminary hearing was adjourned to allow time for respondent, who was not present, to become available.

The preliminary hearing resumed in September 2025, and petitioner continued to seek the child's removal from both parents. A CPS investigator testified that there had been 13 calls for domestic-violence disturbances between the parents in a 10-month period and that both parents tested positive for cocaine. The CPS investigator described an incident in which mother set respondent's vehicle on fire and respondent had assaulted and injured her. The CPS investigator also reported that, upon his arrest, respondent voluntarily provided the child's adult sister with power of attorney over the child and agreed to a safety plan placing the child in the child's sister's care. The CPS investigator confirmed that the adult sister's home was an appropriate placement and had "passed all of our checks." But it was also alleged that the child's mother had attempted to pick up the child while she was intoxicated in violation of the safety plan. Respondent contested authorization of the petition and removal on the basis that the child was voluntarily placed with a relative. The legal guardian ad litem (LGAL) supported authorization of the petition and removal because the mother had tried to pick up the child in violation of the safety plan, noting that, "if we don't remove, either parent could go over at any time, as they have in the past," and pick up the child.

The court authorized the petition under MCL 712A.2(b)(1) and (2) and ordered the child's removal from both parents' custody under MCL 712A.13a(9). This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's factual findings regarding grounds for removal. See *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is 'clearly erroneous' [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted; alteration in original). "Even if an error occurred, this Court will not disturb the trial court's order unless it would be 'inconsistent with substantial justice' to permit the order to stand." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020), quoting MCR 2.613(A). The interpretation and application of statutes and court rules is reviewed de novo. *Id*.

## III. ANALYSIS

Respondent argues that the trial court erred when it ordered the child removed from his custody because the child was already in an adequate relative placement with the child's adult sister. We agree.

The "adjudicative phase is . . . the first step in child protective proceedings[.]" *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014). "When the [DHHS] petitions for removal of a child under MCL 712A.2(b), the court must hold a preliminary hearing or hearings and may authorize the petition 'upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of [MCL 712A.2(b)] . . . .' " *In re Rood*, 483 Mich 73, 94-95; 763 NW2d 587 (2009), quoting MCL 712A.13a(2). In this case, the court found that there was sufficient probable cause to authorize the petition under MCL 712A.2(b)(1) and (2), which provide for jurisdiction over a child:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this subsubdivision:

(A) "Education" means learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar.

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

(C) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

If the petition is authorized, as here, then the court must, applying a preponderance-of-the-evidence standard, *In re Williams*, 333 Mich App at 183, decide whether the child should remain in the respondent's custody or be placed in foster care pending trial, see *In re Benavides*, 334 Mich at 167. MCL 712A.13a(9), which is mirrored by a court rule, MCR 3.965(C)(2), allows for removal and placement into foster care if all the following conditions are met:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

The court must make a sufficient record of its findings regarding all these conditions to enable meaningful appellate review. *In re Williams*, 333 Mich App at 183.

In this case, when evaluating the requirements under MCL 712A.13a(9), the trial court found that custody of the child with respondent presented a substantial risk of harm to the child and that continuing the child's residence in the home was contrary to the child's welfare because of respondent's substance abuse and domestic violence as well as the child's special needs. See MCL 712A.13a(9)(a), (c). The court also found that reasonable efforts had been made to prevent or eliminate the need for removal, citing CPS's investigation and services. See MCL 712A.13a(9)(d). Additionally, the court found that conditions of custody away from respondent were adequate to safeguard the child's health and welfare. See MCL 712A.13a(9)(e). These findings were all supported by record evidence and we detect no clear error.

We agree with respondent, however, that the trial court erred in finding that "[n]o provision of service or other arrangement except removal of the child [was] reasonably available to adequately safeguard the child . . . ." MCL 712a.13a(9)(b). Specifically, the record reflects that respondent had voluntarily placed the child with the child's adult sister as part of a safety plan and

had given the sister power of attorney regarding the child's custody and care.[2]  Petitioner had confirmed that the sister's home and custody was a safe and appropriate placement.  Thus, it appears that such an "arrangement," in addition to being "reasonably available," "adequately safeguarded the child" from the risk of harm to the child that would have existed had respondent failed to find a suitable placement.  *Id*.

In rejecting respondent's argument that removal was unnecessary because the child was safely placed with the child's adult sister, the trial court remarked, "I understand there's a power of attorney, but it hasn't stopped mom or father at times to try and, you know, get the child back." This was clear error.  It is true that there was an allegation, somewhat vaguely alluded to by the CPS investigator in his testimony, that the child's *mother* tried to take the child back from the sister while intoxicated.  But, setting aside whether a finding that the child's mother had attempted to retrieve the child meets the preponderance-of-the-evidence standard,[3] it was clear error for the trial court to find that *respondent* did so, and petitioner points to no evidence in the record to support such a finding.[4]  Just as a court may not adjudicate only one parent as unfit and then enter dispositional orders affecting the parental rights of both parents, *In re Sanders*, 495 Mich at 407, 422, a trial court may not make removal findings on the basis of one parent's behavior and then rely solely on such findings to remove a child from both parents.

Petitioner argues that the trial court did not err because absent removal, respondent would have been able to revoke the power of attorney and return the child to his care at any time.  We are unpersuaded by the argument that the mere legal or hypothetical possibility of a revocation, without more, means that it is not an adequate safeguard under the circumstances.  Petitioner points to no evidence that respondent attempted to remove the child from the adult sister's care or otherwise undermine the safety plan, nor are we aware of anything in the record to suggest that respondent plans to do so, wishes to do so, or is reasonably likely to do so.  Instead, petitioner merely presented an allegation that the child's mother attempted to remove the child, which petitioner's counsel even acknowledged at the hearing was not substantiated.  Without any record evidence that respondent himself was involved in the alleged incident, the mere speculative possibility that respondent could revoke the power of attorney is insufficient to satisfy MCL 712a.13a(9)(b).

Petitioner also points to *In re Martin*, 237 Mich App 253; 602 NW2d 630 (1999), for the proposition that a power of attorney "in no way" creates a guardianship because it is revocable at

---

[2] MCL 700.5103(1) provides, in pertinent part: "By a properly executed power of attorney, a parent or guardian of a minor . . . may delegate to another person, for a period not exceeding 180 days, any of the parent's or guardian's powers regarding care, custody, or property of the minor child . . . ."

[3] At the hearing, petitioner's counsel acknowledged there was only "an allegation, even though it wasn't proven today, that she tried to take the child."

[4] On appeal, petitioner points to a statement by the LGAL that "either parent could go over at any time, *as they have in the past*, and pick this . . . child up." (Emphasis added.)  "But it is well settled that an attorney's statements and arguments are not evidence." *In re Conservatorship of Brody*, 321 Mich App 332, 349; 909 NW2d 849 (2017).

will and only effective for six months. *Id.* at 256-257. But the issue in *In re Martin* was whether a probate court had jurisdiction to consider guardianship petitions when the children's father had executed a power of attorney delegating his parental authority to a family member. *Id.* at 253-256. Interpreting the plain language of a guardianship statute, this Court held that the probate court was not divested of jurisdiction in that circumstance. *Id.* We reasoned that a short-in-duration power of attorney "did not address the long-term needs of the children, and therefore, a guardianship proceeding was appropriate to ensure their well-being." *Id.* at 257. The present case is distinguishable, as it concerns whether the trial court erred when it ordered *removal* in a child-welfare case, not whether the court had *jurisdiction* in a guardianship case. Thus, *In re Martin* is not controlling.

Petitioner's reliance on *In re Webster*, 170 Mich App 100, 105; 427 NW2d 596 (1988), is inapposite for the same reason. In that case, "this Court rejected the respondent mother's argument that the probate court never acquired jurisdiction over the minor child because the respondent executed a power of attorney granting parental authority of the child to a relative." *In re Martin*, 237 Mich App at 256. Because the evidence submitted in support of the neglect petition in that case satisfied the jurisdictional requirements of MCL 712A.2(b), we concluded that the mother's execution of a power of attorney "was ineffective to thwart this jurisdiction." *In re Webster*, 170 Mich App at 106.

At bottom, *In re Martin* and *In re Webster* are not particularly illuminating or persuasive because we are bound by a distinct statutory landscape. Situated in the adjudicative phase of a child-welfare proceeding, the trial court's removal decision under MCL 712A.13a(9) is concerned with protecting children from current risks posed by a parent and requires the court to evaluate whether any other arrangement besides removal "is reasonably available to adequately safeguard" the child from those risks. The calculus is different when a court assumes jurisdiction, as distinct statutory requirements are at play. See MCL 712A.2(b). Further, a court may still exercise jurisdiction and provide services to a parent even if the child is not removed. See *In re Benavides*, 334 Mich App at 167. Accordingly, we are not persuaded that, as a general matter, the mere duration and revocability of a power of attorney is reason to find that placement under power of attorney cannot adequately safeguard a child for purposes of MCL 712A.13a(9).[5]

_____

[5] Petitioner also cites several unpublished opinions from this Court that have applied *In re Martin* and *In re Webster* in the child-welfare context. "Unpublished opinions are not binding authority but may be persuasive or instructive." *In re Miller*, 347 Mich App 420, 426 n 2; 15 NW3d 287 (2023) (cleaned up). But two of the cases cited concern jurisdiction, rather than removal. See *In re BAB*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket Nos. 351300 & 351483); *In re Beeler*, unpublished per curiam opinion of the Court of Appeals, issued August 10, 2017 (Docket No. 337357). As discussed, the question of whether a court's jurisdiction is affected by a child's placement with power of attorney, *In re Martin*, 237 Mich App at 253-257; *In re Webster*, 170 Mich App at 106, is distinct from whether the power-of-attorney placement can be an arrangement to adequately safeguard the child for removal purposes under MCL 712A.13a(9). Although one case petitioner cites, *In re Gowder*, unpublished per curiam opinion of the Court of Appeals, issued August 19, 2021 (Docket No. 356652), does address the

Under the facts before us, we are left with a "definite and firm conviction" that the trial court erred, *In re Mason*, 486 Mich at 152, when it determined that "no other provisions of services or arrangements other than removal" would have "adequately safeguard[ed] the child," MCL 712A.13a(9)(b). The child had been voluntarily placed with his adult sister, whom petitioner determined to be an appropriate placement, under a power of attorney. In light of the lack of evidence showing that respondent had attempted to interfere with this arrangement, the conditions that led to the trial court authorizing the petition, and respondent's history with petitioner, the trial court's reasoning that respondent might revoke the power of attorney was purely speculative. And because the trial court must find all factors under MCL 712A.13a(9) satisfied, the trial court erred in ordering removal. We further conclude that permitting the order to stand would be "inconsistent with substantial justice." MCR 2.613(A).

## IV.  CONCLUSION

For the reasons stated, the trial court clearly erred when it found that the requirements for removal under MCL 712A.13a(9) were satisfied. We reverse the portion of the trial court's order entered after the preliminary hearing that removed the child and remand for further proceedings consistent with this opinion. If, after remand, petitioner again seeks removal of the child, the trial court must make findings as to all the factors enumerated in MCL 712A.13a(9) and MCR 3.965(C)(2) and consider up-to-date information. See *In re Williams*, 333 Mich App at 185.

Reversed and remanded. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Michael J. Kelly
/s/ Sima G. Patel

---

trial court's consideration of a parent's power-of-attorney delegation in the context of a removal decision, its facts involve significant child abuse and physical injuries, and we are unpersuaded by this one opinion to endorse a categorical rule that power-of-attorney placements are wholly irrelevant to the determination of whether there is an "arrangement" other than removal of the child that "is reasonably available to adequately safeguard the child from risk . . . ." MCL 712A.31a(9)(b). We therefore conclude that the unpublished authorities cited by petitioner are unpersuasive and do not adopt them.